# RECORD NO. 13-2501

In The

# United States Court Of Appeals

## For The Fourth Circuit

## DENISE SHIPMAN,

*Plaintiff – Appellant,*

**v.**

## UNITED PARCEL SERVICE, INC.,

*Defendant – Appellee.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
AT RALEIGH**

————————————

## BRIEF OF APPELLANT

————————————

**Sandra J. Polin**
LAW OFFICE OF
  SANDRA J. POLIN
**514 Daniels Street**
**Private Mail Box 330**
**Raleigh, NC  27605**
**(919) 883-7494**

*Counsel for Appellant*

*Gibson*Moore Appellate Services, LLC
421 East Franklin Street ♦ Suite 230 ♦ Richmond, VA  23219
804-249-7770 ♦ www.gibsonmoore.net

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. _____    Caption: _____

Pursuant to FRAP 26.1 and Local Rule 26.1,

_____

(name of party/amicus)

_____

 who is _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?    YES    NO


2.    Does party/amicus have any parent corporations?    YES    NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:




3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    YES    NO
      If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?        YES      NO
        If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)      YES      NO
        If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?                    YES      NO
        If yes, identify any trustee and the members of any creditors' committee:

Signature: _____        Date: _____

Counsel for: _____

## CERTIFICATE OF SERVICE

**************************

I certify that on _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

_____        _____
(signature)                                             (date)

TABLE OF CONTENTS

PAGE:

TABLE OF AUTHORITIES ............................................................................ iii

STATEMENT OF JURISDICTION.................................................................1

STATEMENT OF THE ISSUES.....................................................................2

STATEMENT OF THE CASE .........................................................................2

    Statement of the Facts.................................................................3

    January 2011 – April 2012: Continuing Course of Unlawful Conduct
    and Hostile Work Environment ..................................................4

    Ms. Shipman's First Termination – March 1, 2011 .......................9

    Ms. Shipman's Second Termination – August 2011.....................13

    Ms. Shipman's Third Termination – January 2012.......................14

    Ms. Shipman's Disciplinary Record...........................................17

    Ms. Shipman's EEOC Charge ...................................................17

SUMMARY OF ARGUMENT ......................................................................18

ARGUMENT ...............................................................................................19

    STANDARD OF REVIEW .........................................................19

    I.    THE DISTRICT COURT ERRED IN APPLYING THE
          SUMMARY JUDGMENT LEGAL STANDARD............................19

    II.   THE DISTRICT COURT ERRED IN FAILING TO APPLY
         THE CONTINUING VIOLATION DOCTRINE..............................21

III.   THE DISTRICT COURT ERRED IN CONCLUDING THAT
       MS. SHIPMAN FAILED TO EXHAUST HER
       ADMINISTRATIVE REMEDIES....................................................26

IV.    THE DISTRICT COURT ERRED IN CONCLUDING THAT
       MS. SHIPMAN'S COMPARATOR EVIDENCE WAS
       INVALID ...............................................................................................31

V.     THE COURT ERRED IN FAILING TO CONSIDER
       PLAINTIFF'S ADDITIONAL EVIDENCE CONCERNING
       PRE-TEXT ............................................................................................37

CONCLUSION ................................................................................................38

STATEMENT REGARDING ORAL ARGUMENT ...........................................39

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

PAGE(S):

CASES:

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986)................................................................19, 20, 32

Burns v. AAF-McQuay, Inc.,
    96 F.3d 728 (4th Cir. 1996) ...............................................................37

Chacko v. Patuxeent Inst.,
    429 F.3d 505 (4th Cir. 2005) .............................................................26

Chisolm v. U.S. Postal Serv.,
    665 F.2d 482 (4th Cir. 1981) .............................................................26

Coleman v. Donahue,
    677 F.3d 835 (7th Cir. 2012) .............................................................32

Fed. Ex. v. Holowecki,
    552 U.S. 389 (2008)...................................................................28, 29

George v. Leavitt,
    407 F.3d 405 (D.C. Cir. 2005).........................................................37

Holland v. Washington Homes, Inc.,
    487 F.3d 208 (4th Cir. 2007) ..........................................................21

Kelley v. United Parcel Service,
    No. 12-2343, __ F. App'x __, 2013 WL 2480211
    (4th Cir. June 11, 2013) .........................................................33, 35, 36

McDonnell Douglas Corp. v. Green,
    411 U.S. 792 (1973)...............................................................32, 34, 36

Miles v. Dell, Inc.,
    429 F.3d 480 (4th Cir. 2005) ..........................................................26

Nat'l R.R. Passenger Corp. v. Morgan,
        536 U.S. 101 (2002)...................................................................22

Olson v. Rembrandt Painting Cos.,
        511 F.2d 1228 (8th Cir. 1975) .........................................22

Sydnor v. Fairfax County, Virginia,
        681 F.3d 591 (4th Cir. 2012) ...................................29, 30

Taylor v. Home Ins. Co.,
        777 F.2d 849 (4th Cir. 1985) .........................................24

Todrick Street v. United Parcel Service,
        822 F. Supp. 1357 (M.D. Ga. 2011).................................33, 34, 35

STATUTES:

28 U.S.C. § 1291 .....................................................................1

28 U.S.C. § 1331 .....................................................................1

28 U.S.C. § 1343 .....................................................................1

28 U.S.C. § 2201 ("ADEA") ...............................................1, 2

28 U.S.C. § 2202 ("ADEA") ...............................................1, 2

29 U.S.C. § 621 *et seq.*.........................................................1

42 U.S.C. § 2000(e) *et seq.*(Title VII of the Civil Rights Act of 1964) ...............1, 2

<u>STATEMENT OF JURISDICTION</u>

This appeal is taken from an Order filed on 3 October 2013 by the Honorable James C. Fox of the United States District Court of the Eastern District of North Carolina, Western Division. JA 954. The Order granted United Parcel Service Inc.'s Motion for Summary Judgment disposing of Denise Shipman's gender, race and age discrimination, hostile work environment, and retaliation claims grounded in Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section(s) 2000(e) *et seq.*, 28 U.S.C. Sections 2201 and 2202 and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. Section 621 *et seq*.

On 16 December 2013, the Honorable James C. Fox denied Ms. Shipman's Motion for Reconsideration which Ms. Shipman filed on 28 October 2013. JA 1062.

Pursuant to 28 U.S.C. Sections 1331 and 1343, the United States District Court for the Eastern District of North Carolina, Western Division, had jurisdiction over the matter.

This matter is properly before this Court based upon 28 U.S.C. Section 1291 in that the 16 December 2013 Order was the final order in the case and ended the litigation on the merits. Ms. Shipman timely filed her Notice of Appeal with the District Court. JA 1000.

## STATEMENT OF THE ISSUES

Did the District Court err in granting United Parcel Service Inc.'s Motion for Summary Judgment disposing of Denise Shipman's Title VII and ADEA claims of gender, race and age discrimination, retaliation and hostile work environment?

## STATEMENT OF THE CASE

This is an employment discrimination action by Denise Shipman, a former UPS employee, alleging discriminatory conduct against her because of her age, gender and race, conduct resulting in the creation of a hostile work environment, retaliation, and unlawful termination of her employment three times between January 2011 and January 2012.

Denise Shipman ("Ms. Shipman") filed her Complaint alleging gender, race, and age discrimination, retaliation and hostile work environment on 7 September 2012. JA 9. United Parcel Service, Inc. ("UPS") filed its Motion for Summary Judgment on 2 July 2013. JA 30.

Ms. Shipman filed a timely Memorandum in Response to UPS's Motion for Summary Judgment. JA 572. On 9 August 2013, UPS filed a Consent Motion for Leave to file Excess Pages and its Reply Brief. JA 888. On 19 August 2013, Ms. Shipman filed a Motion for Leave to file a Corrected Copy of the Memorandum in Response to UPS's Motion for Summary Judgment. JA 910. On 22 August 2013, UPS filed a timely Memorandum in Response. JA 949.

On 3 October 2013, the Honorable James C. Fox issued an Order granting UPS's Motion for Summary Judgment disposing of Ms. Shipman's claims of gender, race, and age discrimination, retaliation and hostile work environment. JA 954.

On 28 October 2013, Ms. Shipman filed a Motion for Reconsideration. JA 979. UPS filed a timely Memorandum in Response. JA 1002. On 16 December 2013, the Honorable James C. Fox denied Ms. Shipman's Motion for Reconsideration. JA 1062. Ms. Shipman's Notice of Appeal was timely filed with the District Court, appealing the District Court's disposition of her discrimination, retaliation and hostile work environment claims. JA 1000.

<u>Statement of the Facts</u>

Ms. Shipman is a 49 year old African American female who was employed by United Parcel Service, Inc. ("UPS") at the UPS Raleigh facility for fifteen years, from 1997 to 2012. Ms. Shipman began employment at UPS as a part-time employee and worked her way up to a position as a full-time package car driver. JA 9, 12. She was the only African American female package car driver in the Cary Package Center, out of eighty- two drivers. JA 13, 270, 763.

In January 2011, Lindy Blakenship Hill became Business Manager of the Cary Package Center and Plaintiff's manager. JA 9, 136. Ms. Blakenship Hill is a 35 year old Caucasian female who began her employment with UPS in 2000 as a

part-time supervisor and held supervisory and managerial positions during her entire tenure at UPS.  After thirteen years, Ms. Blakenship Hill retired from UPS in June 2013. JA 136.

Ms. Shipman's direct supervisor was Mike Smith, a 31 year old African American male who began with UPS in 2004. Mr. Smith became On Road Supervisor in the Cary Package Center in 2006 and Ms. Shipman's direct supervisor. JA 12, 137, 763.

In October 2011, Greg Hawkins became Ms. Shipman's direct supervisor. Chris Smith was Business Manager of the Cary Package Center prior to Ms. Blakenship Hill and Ms. Shipman's manager prior to January 2011. JA 16, 137, 422, 763.

<u>January 2011 – April 2012: Continuing Course of<br>Unlawful Conduct and Hostile Work Environment</u>

From January 2011 through April 2012, Ms. Blakenship Hill and UPS engaged in a series of actions against Ms. Shipman, which created and subjected Ms. Shipman to a hostile work environment and retaliation.

Mr. Smith, as Ms. Shipman's direct supervisor, participated in this repeated conduct, severe and pervasive, which interfered with Ms. Shipman's working conditions. UPS's high level managers, Walt Dickson and Lester Grant, business labor managers, and Nicole Brandon, division manager, also participated in this continuing course of conduct.

Specifically, the unlawful actions included Ms. Blakenship Hill harassing Ms. Shipman; Mr. Hawkins preventing Ms. Shipman from completing her delivery work in January 2012 by conducting a check in audit on her package car while she was in the process of taking packages to the clerk; Ms. Blakenship Hill and Mssrs. Smith and Hawkins denying Ms. Shipman training needed to operate her route in February 2011, August 2011 and November 2011.

Additional actions included Ms. Blakenship Hill and Mr. Smith refusing to timely assist Ms. Shipman on February 21, 2011; Ms. Blakenship Hill and Mssrs. Smith and Hawkins failing to properly coach and counsel Ms. Shipman regarding Route 31A; Ms. Blakenship Hill denying Ms.Shipman her gate key to operate Route 31A and her employee badge to gain access to the UPS facility from November 2011 through January 2012; and Ms. Blakenship Hill and Mr. Smith removing Ms. Shipman from her route, through Article 50 terminations and on work days when Mr. Smith instructed Ms. Shipman to go home and then had other drivers to cover her route. JA 12, 13, 15-19, 23, 24, 146, 149, 166, 265, 266, 269, 288, 289, 292, 293-297, 301, 308, 314, 316-320, 780, 781, 870.

All of these actions occurred during the fifteen month time from January 2011, when Ms. Blakenship Hill first began to manage Ms. Shipman, through April 2012, when a panel heard Ms. Shipman's grievance regarding her third termination. JA 12, 16, 18, 19, 23, 24.

In addition, during this fifteen month timeframe, Ms. Brandon and Mssrs. Grant and Dickson failed to properly investigate Ms. Shipman's three terminations; Mssrs. Dickson and Grant upheld two 90 day unpaid suspensions following Ms. Shipman's first two terminations; and Ms. Brandon returned Ms. Shipman to Ms. Blakenship Hill's supervision after the first two terminations. JA 138, 166.

The actions of Ms. Blakenship Hill, the core group of actors, and UPS had a cumulative effect during this time period of unlawfully placing significant obstacles in Ms. Shipman's path as a package car driver that severely and pervasively interfered with her work conditions and subjected her to an abusive and offensive work environment. JA 316-318.

Soon after Ms. Blakenship Hill started to manage Ms. Shipman, Dwight Pulley and other package car drivers informed Ms. Shipman that Ms. Blakenship Hill said she was "going to get" Ms. Shipman. JA 10, 13, 265, 266, 764. Ms. Shipman's coworkers also told her that Mr. Smith had said that "while he was a supervisor she would not drive for him." JA 764. Hearing these two statements from her co-workers, whether they were true or not, impacted Ms. Shipman's state of mind and significantly contributed to her belief that she was being targeted and harassed by Ms. Blakenship Hill, Mr. Smith and UPS. JA 12, 16, 18, 19, 23, 24.

On January 12, 2012, during a meeting in Ms. Blakenship Hill's office, Ms. Blakenship Hill terminated Ms. Shipman for the third time. When Ms. Shipman

attempted to explain her actions, Ms. Blakenship Hill interrupted Ms. Shipman, told her she did not want to hear it, and to "save it for the hearing". Ms. Blakenship Hill further told Ms. Shipman "[y]ou didn't say anything to make me feel all warm and fuzzy, so you are fired." JA 10, 22, 233-236, 298.

Ms. Blakenship Hill terminated Ms. Shipman three times between January 2011 and January 2012. JA 10, 146. These terminations were not based upon progressive discipline but were immediate terminations based upon Ms. Shipman's alleged violation of UPS's honesty policy. Ms. Shipman was taken out of work after each termination. Ms. Shipman appealed her termination each time through UPS's union grievance process. After her terminations on March 1, 2011 and on August 29, 2011, UPS reinstated Ms.Shipman to her position and to Ms. Blakenship Hill's supervision. After each termination and before she was returned to her position, Ms. Shipman was out of work for approximately 90 days. She was not paid during this time. JA 10, 138, 149, 166, 870.

After each termination, Ms. Shipman was returned to work and within weeks would be terminated again by Ms. Blakenship Hill and taken out of work.

After her March 2011 termination, Ms. Shipman was returned to work on July 5, 2011. UPS converted her termination into a 95 day unpaid suspension. Ms. Shipman was returned to Route 31A in July 2011 and worked the route for about 40 days, until she was terminated again on August 2011 by Ms. Blakenship Hill.

Ms. Shipman was taken out of work for almost 90 days again and returned to work on November 21, 2013, just in time to work during holiday peak season. UPS again converted her termination into an almost 90 day unpaid suspension (her second), returning her again to Ms. Blakenship Hill's drivers' group and Route 31A. JA 138, 166.

On the first day back from the New Year's holiday, on January 3, 2012, Ms. Blakenship Hill terminated Ms. Shipman for the third time for dishonesty. JA 21.

Ms. Blakenship Hill and UPS could have disciplined Ms. Shipman for her work methods violations by administering progressive discipline, starting with a verbal or written warning. If Ms. Shipman continued to violate policies relating to package delivery, the discipline could have escalated to her facing a suspension. If she continued to violate recording or delivery policies, Ms. Shipman could have received a working termination where she would have stayed on the job and been paid until her grievance was heard. JA 14, 69, 870.

Instead, Ms. Blakenship Hill and UPS chose to terminate Ms. Shipman for dishonesty, a UPS "cardinal sin", with the effect that Ms. Shipman was immediately removed from her driver position. As a result, Ms. Shipman was out of work ten months. She worked only about four months between the time Ms. Blakenship Hill first began to supervise her in January 2011 and her panel hearing after her third termination in April 2012. Ms. Shipman was never paid for the time

8

she was out of work, until after the panel hearing in April 2012. And then she was only paid for the three months she was out of work during her third termination. JA 15.

Ms. Shipman grieved her January 12, 2012 termination, her third termination, through the union grievance process as well. However, the panel that heard her grievance failed to return Ms. Shipman to her position after the third termination. The panel did conclude that the dishonesty charge upon which her termination was based was not proven and awarded her back pay for the three months that she was out during her third termination. The panel concluded that Ms. Shipman was entitled to back pay because she should have been given progressive discipline and a working discharge. JA 73.

None of the panels found evidence of dishonesty to support Ms. Shipman's terminations.  Ms. Shipman has been unemployed since January 12, 2012. JA 10.

<u>Ms. Shipman's First Termination – March 1, 2011</u>

In January 2011, Ms. Shipman bid on a delivery route and was assigned Route 31A. JA 13, 136, 199.  Route 31A consisted of North Carolina State University and received a high volume of packages. Drivers, including Ms. Shipman, used a gate key to operate the route to gain access to the gated parts of the campus. JA 20, 320.

In February 2011, Ms. Shipman received training on Route 31A from Mr. Smith. JA 13, 200, 405-406. Mr. Smith accompanied Ms. Shipman on her package car during this training period. On Friday, February 18, 2011, the fifth day of training, Ms. Shipman and Mr. Smith agreed that Mr. Smith would provide a sixth full day of training for Ms. Shipman on Monday, February 21, 2011. Ms. Shipman had told Mr. Smith that she did not know the route well enough to drive the route alone. JA 262-264.

Mr. Smith knew Route 31A better than anyone. His managers select him to train drivers on Route 31A even when he is not the driver's direct supervisor. Mr. Smith created charts and maps to assist Ms. Shipman in navigating the campus and learning the location of the buildings, including dormitories.

Ms. Shipman arrived to the Cary Package Center on the morning of Monday, February 21, 2011 and learned that she would have to drive Route 31A alone. Neither Mr. Smith nor anyone else would be riding with her. Ms. Shipman began to get worried and began to ask for help. Mr. Smith was unable to provide the promised training to Ms. Shipman that morning because he had to drive a ms package car for a driver whose license had been suspended.

Ms. Blakenship Hill and Mr. Smith had the choice to assign a "cover" driver, a driver assigned to cover a route when the regular driver is unable to, to assist the driver with the suspended license. They chose not to do that. Ms.

10

Blakenship Hill and Mr. Smith also had the choice to assign a cover driver to assist Ms. Shipman for that day. They chose not to do that either. JA 316-317, 764, 791.

Before she left the Raleigh Atlantic Avenue facility to begin her route, Ms. Shipman requested assistance from Mr. Smith and Ms. Blakenship Hill. Mr. Smith told Ms. Shipman before she left the facility to "go ahead, we'll get you some help". JA 13.

At 10:30 am, Ms. Shipman began to contact Ms. Blakenship Hill via the Operations Management Specialist ("OMS") network and ask for assistance on the route. Ms. Shipman called Ms. Blakenship Hill on an hourly basis requesting assistance. Ms. Blakenship Hill and Mr. Smith ignored all of Ms. Shipman's requests for assistance during the day which hampered and interfered with Ms. Shipman's timely completing delivery of the route's high volume of packages. JA 13, 14.

Between 4:00 pm and 5:00 pm, Mr. Smith, Dave Murphy, On Road Supervisor, and four drivers came out to meet Ms. Shipman. However, it was too late. JA 14, 154-156, 407-409.

The drivers dispatched to Ms. Shipman were sent for "damage control, to see what they could salvage. They were able to salvage some packages and deliver them to some residences and businesses that had not closed at 5:00 pm. For the most part, however, many packages were not delivered. Even with the assistance of

11

six additional co-workers, packages on Ms. Shipman's package car were not delivered because the assistance came too late in the day. Admittedly, it was a disaster, but a predictable one. JA 14, 137, 154-156, 407-409.

Upon meeting a visibly upset Ms. Shipman, Mr. Murphy was sympathetic, recognizing that Ms. Shipman had become overwhelmed on the new route. JA 14. Mr. Smith testified in his deposition that he agreed that Ms. Shipman must have become overwhelmed. JA 410.

Ms. Blakenship Hill terminated Ms. Shipman for her performance on February 21, 2011, the first day Ms. Shipman drove Route 31A by herself, after depriving Ms. Shipman of her promised additional day of training and ignoring Ms. Shipman's requests for assistance on the route for most of the day. Ms. Blakenship Hill failed to issue Ms. Shipman any verbal or written warnings prior to terminating her. JA 14.

Moreover, Ms. Blakenship Hill choose not to administer progressive discipline to Ms. Shipman for the February 21, 2011 incident. She chose not to issue Ms. Shipman a warning for failure to follow methods and procedures concerning the miscoding and late delivery of next day air packages, the stated reason for Plaintiff's termination.

12

In addition, Ms. Blakenship Hill failed to provide Ms. Shipman with additional route training or coaching after the February 21, 2011 incident but before terminating her. JA 15, 149.

<u>Ms. Shipman's Second Termination – August 2011</u>

On August 29, 2011, approximately 40 days after her return to work, Ms. Blakenship Hill terminated Ms. Shipman for a second time. JA 17.  Ms. Blakenship Hill grounded Ms. Shipman's second termination in dishonesty again, allowing for an immediate termination without benefit of progressive discipline. Again Ms. Shipman was deprived of her wages during her termination.

Specifically, Ms. Blakenship Hill terminated Ms. Shipman the second time for using the "left at" key on her DIAD board when Ms. Shipman left packages that were addressed to several dormitories at one dormitory on NCSU's campus. Mr. Smith instructed Ms. Shipman to use the "left at" key in such a manner during her training in order to note that she had left packages that were addressed to other dormitories at one central dormitory.  JA 17, 18, 19, 359.

During the grievance hearing for the second termination, Steve Bishop, Business Agent, was able to prove that Ms. Shipman was not engaging in dishonest behavior by pulling the delivery records Ms. Shipman generated while training on Route 31A with Mr. Smith and showing how Ms. Shipman used the "left at" key under the same circumstances while leaving packages at the dormitories. JA 764.

Ms. Shipman was told by Duane Tipton, Mohammed Hussein, Tim Pearson, all drivers in her group managed by Ms. Lindy Blakenship Hill, that they all had used the "left at" key in the same way, on the same route, during the same time frame. Mssrs. Hussein and Pearson were "cover drivers" and operated the route when Ms. Shipman was unable to or pulled off the route by Mr. Smith. JA 18, 791.

Mssrs. Hussein, Pearson and Tipton further told Ms. Shipman that Ms. Blakenship Hill merely verbally counseled them to no longer use the "left at" key under these circumstances. Instead Ms. Blakenship Hill coached them to enter all the multiple dormitory packages under the one address of the central dormitory, as one stop. Mssrs. Hussein, Pearson and Tipton were only verbally counseled, not terminated or otherwise disciplined. JA 18, 215, 270-275, 287-289.

The panel hearing for the second termination, having found no evidence of dishonesty, returned Ms. Shipman once again to Route 31A and Ms. Blakenship Hill's supervision in November 2011. Ms. Shipman's termination was again converted into a nearly three month unpaid suspension.

<u>Ms. Shipman's Third Termination – January 2012</u>

On January 3, 2012, at the end of holiday peak season, Ms. Shipman returned to Route 31A from the three-day New Year's Day holiday. Ms. Shipman had many packages on "future" delivery status as students and professors were away from the North Carolina State University campus and would not return until

14

January 6, 2012. JA 19, 20, 139. Those packages were scheduled to be delivered when the students and professors returned to campus.  Ms. Shipman had some of these packages on her route before the New Year's break.

Ms. Blakenship Hill and Mr. Hawkins failed to provide Plaintiff with the route's gate key for January 3, 2012 and January 4, 2012. The denial of her gate key hampered and interfered with Plaintiff work conditions and prevented her from timely completing her route. Without the gate key, Ms. Shipman had to find parking further away from her delivery location and walk to the delivery location rather than use the gate key to gain access to the gated areas and park nearer to the delivery location. JA 20, 320.

Ms. Shipman returned to the Raleigh Atlantic Avenue facility around 8:45 pm. She pulled into the facility and parked her package car. Ms. Shipman had in her hand some packages and was intending to take them to the exception clerk to explain that the packages had been on "future" and to determine how the packages needed to be handled. Ms. Shipman understood that UPS did not want drivers to repeatedly scan future packages.  JA 20, 21, 775-779.

Ms. Shipman attempted to explain the status of each package to Mr. Hawkins. At that point, Mr. Hawkins told Ms. Shipman to "just hand me those packages that you have." Mr. Hawkins interfered with Ms. Shipman as she was

15

attempting to complete her delivery work and take the packages to the exception clerk. JA 21, 314, 318.

On January 12, 2012, Ms. Blakenship Hill terminated Plaintiff for a third time. Ms. Blakenship Hill's termination letter dated January 12, 2012 stated that Ms. Shipman was terminated for alleged falsification of UPS's records and documents, dishonesty, and overall work record.  JA 21.

On the morning of January 12, 2012, when Plaintiff reported to work, Mr. Hawkins told Plaintiff that Ms. Blakenship Hill wanted to see her in Ms. Blakenship Hill's office. Jim Freeman, a union shop steward, was present at the meeting. During the meeting, Ms. Blakenship Hill asked Ms. Shipman why she should not be terminated. Ms. Shipman began to respond but was quickly interrupted by Ms. Blakenship Hill. Ms. Blakenship Hill told Ms. Shipman "save it for the hearing. I don't want to hear it." Ms. Blakenship Hill then immediately told Ms. Shipman "[y]ou did not say anything to make me feel all warm and fuzzy, so you are fired." JA 22, 233-236, 298.

Ms. Shipman grieved her third termination through the union grievance process.  The panel heard the grievance in April 2012 and by letter dated April 30, 2012, Ms. Shipman was advised that her third termination was being upheld. However, the letter went on to state that the dishonesty charge had not been proven.  Ms. Shipman was awarded back pay for three months, from January 12,

16

2012 through April 2012 because the panel concluded that Ms. Shipman should not have been terminated for dishonesty but should have been afforded progressive discipline and received a working discharge. JA 22, 23, 73, 246-247, 369-371.

## Ms. Shipman's Disciplinary Record

Ms. Shipman had received no written warnings or any other discipline from Ms. Blakenship Hill from January 2011 through February 21, 2011. Prior to January 2011 and Ms. Blakenship Hill's supervision of Ms. Shipman, Chris Smith and other managers and supervisors had administered progressive discipline to Ms. Shipman. JA 255-256, 378-86, 800-803.

## Ms. Shipman's EEOC Charge

Ms. Shipman filed her EEOC charge with the Raleigh EEOC office on May 29, 2012. She filed her charge without the assistance of counsel. At the time, she had not retained counsel to assist her with her employment discrimination claims. Ms. Shipman testified during her deposition that she thought she had mentioned to the EEOC investigator that she had been terminated twice before by Ms. Blakenship Hill. The EEOC charge alleged that Ms. Blakenship Hill had discriminated against Ms. Shipman on the grounds of her age, gender and race when she was terminated in January 2012.

Although January 17, 2012 is set forth as the first and last day of the discriminatory conduct , this apparently was a typographical error in that this

17

appears to be the date when Ms.Shipman filed her grievance with the union. The EEOC charge contains other typographical errors as well, including a misspelling of Ms. Blakenship Hill's first name ("Linda" rather than "Lindy") and the date of the third termination ("January 11, 2012" rather than the correct date of "January 12, 2012").  JA 250-254, 257-259.

## SUMMARY OF ARGUMENT

The District Court erred in granting UPS's Motion for Summary Judgment. The District Court erred by failing to view the evidence presented in the light most favorable to Ms. Shipman and by reaching conclusions concerning the evidence that were to be considered by a jury. Ms. Shipman has set forth sufficient facts for a jury to find in her favor on her claims for hostile work environment, retaliation, and the three unlawful terminations based upon age, gender and race. UPS is not entitled to judgment as a matter of law.

The District Court erred in concluding that Ms. Shipman's comparator evidence was not sufficient to create a genuine issue of material fact for a jury to consider. The District Court also erred in refusing to conclude that there was at least a genuine issues of material fact regarding the application of the continuing violation doctrine and the issue pertaining to Ms. Shipman's exhaustion of her administrative remedies.

ARGUMENT

STANDARD OF REVIEW

An appellate review of a District Court's grant of summary judgment is a de novo review.  Ms. Shipman is entitled to have the credibility of her evidence as forecast assumed, her version of all that is in dispute accepted, and all internal conflicts in it resolved favorably to her. The court must draw all justifiable inferences in favor of the nonmoving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986).

The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. A court many not decide questions of credibility in ruling on summary judgment. <u>Anderson</u> at 249, 251-252.

I.    THE DISTRICT COURT ERRED IN APPLYING THE SUMMARY JUDGMENT LEGAL STANDARD

Summary Judgment is inappropriate when a reasonable jury could find in favor of  the non-moving party. In reviewing a motion for summary judgment, the Court reviews the facts in light most favorable to the plaintiff. <u>Anderson v. Liberty Lobby, Inc.</u> at 252.

In addition, the non-moving party is entitled to have the credibility of her evidence as forecast assumed, her version of all that is in dispute accepted, all internal conflicts in it resolved favorably to her, the most favorable of possible

19

alternative inferences from it drawn in her behalf; and finally, to be given the benefit of all favorable legal theories invoked by the evidence so considered. Anderson at 252.

The District Court erred in failing to apply these well established standards. Specifically, the District Court erred in failing to view the evidence in a light most favorable to Ms. Shipman. It failed to resolve conflicts among the evidence in favor of Ms. Shipman. It failed to assume the credibility of Ms. Shipman's evidence.

And in considering Ms. Shipman's evidence concerning her exhaustion of administrative remedies, the application of the continuing violation doctrine, comparator and other pretext evidence, the District Court erred in not allowing a jury to consider the genuine issues of material fact that Ms. Shipman's evidence raised.

The District Court erred in holding that Ms. Shipman's claims were based solely on Ms. Blakenship Hill's three unlawful terminations. This error undercut Ms. Shipman's argument that the three terminations were non-discrete adverse actions and that the continuing violation doctrine should have been applied.

The District Court erred by concluding that UPS demonstrated that it was entitled to judgment as a matter of law. Genuine issues of material fact regarding whether Ms. Blakenship Hill and UPS acted with a discriminatory motive arose

from the evidence proffered by Ms. Shipman. The District Court dismissed Ms.

Shipman's evidence it in its entirety.

## II.    THE DISTRICT COURT ERRED IN FAILING TO APPLY THE CONTINUING VIOLATION DOCTRINE

The District Court erred in failing to apply the continuing violation doctrine

to Ms. Shipman's claims and in concluding that her claims outside of her unlawful

termination in January 2012 were all time barred.

The series of actions Ms. Shipman suffered from January 2011 through

April 2012 were most certainly a continuing course of conduct, sufficiently related,

and subject to the continuing violation doctrine. The cyclical acts of unlawfully

terminating Ms. Shipman without progressive discipline, upholding a series of

three month unpaid suspensions, returning her to the same manager, repeatedly and

pervasively interfering with her work conditions, constitute a continuing violation,

an ongoing pattern of discrimination.

In the Fourth Circuit, the continuing violation doctrine "allows for

consideration of incidents that occurred outside the time bar when those incidents

are part of a single, ongoing pattern of discrimination." Holland v. Washington

Homes, Inc., 487 F.3d 208, 219 (4th Cir. 2007). The doctrine is based on the idea

that some discriminatory employment practices—namely hostile environment

claims—are "composed of a series of separate acts that collectively constitute one

unlawful employment practice." <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 116-17 (2002).

The District Court erred in failing to apply the continuing violation doctrine to Ms. Shipman's hostile work environment and retaliation claims and also to her claims concerning her three unlawful terminations. The District Court erred in viewing Ms. Shipman's three terminations within a fifteen month period as "discrete" adverse actions rather than non-discrete. The District Court failed to properly analyze the manner in which UPS administers terminations. In the context in which UPS administers terminations to its employees, terminations are non-discrete adverse actions. To hold that Ms. Shipman's terminations were discrete adverse actions contradicts the correct understanding of how UPS's terminations operate. The District Court erred in accepting without deeper analysis the conclusion that UPS's terminations were discrete acts.

For most employees, once they are terminated they do not return to work. Their termination is indeed a one-time event, isolated, not subject to repeat, discrete. Normally, terminations end the employer's discrimination against the employer and thereby trigger the charge-filing period for any violations that have continued up to or occurred on the date of termination. <u>Olson v. Rembrandt Painting Cos.</u>, 511 F.2d. 1228, 1234 (8th Cir. 1975) (noting that termination of

employee through discharge "puts at rest the employment discrimination"). That is not the case at UPS.

As a result of the UPS Collective Bargaining Agreement, not only can an UPS employee be returned to work one time after being terminated, an employee can be terminated and returned to work several times throughout his or her UPS career. The evidence shows that Ms. Shipman received at least one working discharge under Article 7 of the Collective Bargaining Agreement for violating work methods and procedures under Chris Smith's management, prior to being managed by Ms. Blakenship Hill.

In addition, even outside of a working discharge under the progressive discipline policies of the UPS Collective Bargaining Agreement, a UPS employee can be immediately terminated, like Mrs. Blakenship Hill terminated Ms. Shipman, under Article 50. The employee can be taken out of work until his or her grievance is heard and then returned to work if the panel decides that the employee was not terminated for just cause. Under both scenarios, UPS terminations are mostly non-discrete adverse actions.

Ms. Shipman's three terminations were all non-discrete adverse actions, embedded in a continuing course of unlawful conduct which created a hostile work environment.  Ms. Shipman proffered evidence to show that. A jury could have reasonably found in Ms. Shipman's favor that her terminations were non-discrete

adverse actions and that the continuing violation doctrine should have been applied by the District Court. At the very least, the District Court should have concluded that a genuine issue of material fact was created by the evidence as to whether the terminations were non- discrete adverse actions The issue should have been considered by a jury.

Taylor v. Home Ins. Co., 777 F.2d 849 (4th Cir. 1985) is instructive. The District Court erred in dismissing the Taylor court's reasoning. In Taylor, the court permitted an individual to revive a claim for an age-based demotion arising more than 180 days prior to the filing of the EEOC charge under the continuing violation doctrine where he suffered a second age-based demotion within the limitations period and he filed his charge within the statutory period of the last occurrence. Id. at 856-57.

The Taylor court permitted the plaintiff to seek relief for both demotions, noting that the unlawful employment conduct continued into the limitations period and that the plaintiff's two claims were similar. Id. at 857.

The Court's analysis in Taylor applies here. As in Taylor, the discriminatory conduct that gave rise to Ms. Shipman's unlawful first and second terminations, occurring in March 2011 and August 2011, continued into the limitations period. Ms. Shipman filed her claim concerning her third termination within the statutory period of the last occurrence. Moreover, the three termination claims are similar,

involving the same core group of actors and the same bases of discrimination: age, gender, and race. They are sufficiently related in subject matter and scope.

In addition, the unlawful terminations that Ms. Shipman was subjected to in March 2011, August 2011, and January 2012 were part and parcel of a series of actions that continued from January 2011 through April 2012. The terminations were part of an ongoing series of unlawful conduct, including retaliation. These actions worked together to produce a hostile work environment for Ms. Shipman.

The District Court erred in not applying the continuing violation doctrine to Ms. Shipman's disparate treatment claims and her hostile work environment and retaliation claims. The District Court erred in concluding that the discriminatory conduct alleged by Ms. Shipman began and ended on January 17, 2012. That conclusion cannot be reached from the evidence Ms. Shipman proffered. The date of January 17, 2012 appears to be when Ms. Shipman's third union grievance was filed. There is no support found for fixing Ms. Shipman's claims to that date which was probably entered in error in Ms. Shipman's EEOC charge. As stated above, there are several other errors in Ms. Shipman's EEOC charge.

January 17, 2012 cannot be the date that Ms. Shipman's alleged discriminatory conduct began and ended as she was terminated prior to that date and suspended beyond that date. Ms. Shipman has proffered sufficient evidence regarding this issue.

III.    THE DISTRICT COURT ERRED IN CONCLUDING THAT MS. SHIPMAN FAILED TO EXHAUST HER ADMINISTRATIVE REMEDIES

The District Court erred in concluding that it lacked jurisdiction to consider any allegations in Ms. Shipman's Complaint that were not also raised in the underlying administrative EEOC charge. The District Court erred in concluding that Ms. Shipman failed to exhaust her administrative remedies.

The purpose of the administrative exhaustion requirement is to provide the employer with notice of the charge, permit the EEOC to investigate the charge, and give the parties an opportunity to resolve their dispute without resorting to litigation. Miles v. Dell, Inc., 429 F.3d 480, 491 (4th Cir. 2005).

Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent lawsuit. Chacko v. Patuxeent Inst., 429 F.3d 505, 506, 509 (4th Cir. 2005) Accordingly, the scope of litigation is confined by the "scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination." Chisolm v. U.S. Postal Serv., 665 F.2d 482, 491 (4th Cir. 1981).

The District Court erred in narrowing the scope of litigation here to the EEOC charge itself. The District Court focused on Ms. Shipman's EEOC charge and, specifically, on the January 17, 2012 date, concluding that the discriminatory

conduct alleged by Ms. Shipman occurred on that date. In order to reach this conclusion, the District Court gives undue weight to the EEOC charge and insufficient weight to the questions of whether the claims set forth in Ms. Shipman's Complaint were reasonably related to the claims set forth in her EEOC charge and whether the claims set forth in the Complaint could have been developed from a reasonable investigation by the EEOC.

Ms. Shipman's claims as set forth in her Complaint are those reasonably related to those stated in the initial EEOC charge. The EEOC charge alleges that the January 2012 termination was discriminatory based upon Ms. Shipman's age, gender and race. In Ms. Shipman's Complaint, she claims that her March 2011 and August 2011 terminations were also discriminatory based upon her age, gender and race. These claims are sufficiently similar, involving the same conduct: terminations for dishonesty, the same manager, the same grounds of discrimination, *i.e.* age, gender and race. Based on the evidence proffered by Ms. Shipman, a jury could have found in favor of Ms. Shipman on this point.

Moreover, a jury could have found in favor of Ms. Shipman that the age, gender and race based discrimination charges relating to the March 2011 and August 2011 terminations would have been developed by a reasonable investigation by the EEOC. It is for the jury to consider whether the EEOC would have developed the charges based on its investigation, not the District Court.

When the District Court concluded that the charges were not reasonably related and EEOC would not have developed the charges from a reasonable investigation it usurped function of EEOC and the jury. EEOC was entitled to determine whether its reasonable investigation would develop Ms. Shipman's claims. It is an exercise of its authority to apply its own regulations and procedures in the course of routine administration of the statute it enforces. Fed. Ex. v. Holowecki, 552 U.S. 389, 404 (2008). Ms. Shipman's evidence raises a genuine issue of fact pertaining to this. It is the jury's function to consider this genuine issue of fact.

Moreover, the District Court erred in its reliance on the EEOC charge which had several typographical errors. The District Court had before it evidence that Ms.Shipman filed the EEOC charge without the assistance of counsel. The United States Supreme Court in Holowecki concluded that [d]ocuments filed by an employee with the EEOC "should be construed, to the extent consistent with permissible rules of interpretation, to protect the employee' rights and statutory remedies." Fed. Ex. v. Holowecki at 404.

The Court went on to state that construing ambiguities against the drafter may be the more efficient rule to encourage precise expression in other contexts; here, however," the rule would undermine the remedial scheme Congress

adopted". Id.  *See also* Sydnor v. Fairfax County, Virginia, 681 F.3d 591 (4th Cir. 2012).

In Sydnor, this Court reversed the District Court's Order that dismissed Sydnor's ADA case because she failed to exhaust her administrative remedies. In reaching this conclusion, this Court held that it was important to strike a balance between providing notice to employers and the EEOC on one hand and ensuring Plaintiffs are not tripped up over technicalities on the other. Sydnor at 597.

This Court's analysis in Sydnor is instructive here. This Court noted that the exhaustion requirement should not become a "tripwire" for plaintiffs in that Title VII sets up a remedial scheme in which laypersons, rather than lawyers, are expected to initiate the process (quoting Fed. Ex. Corp. v. Holowecki (citations omitted).This Court reasoned that "[w]hile it is important to stop clever parties from circumventing statutory commands, we may not erect insurmountable barriers to litigation out of overly technical concerns". Id. at 596. order to exhaust their administrative remedies.

Turning to Ms. Sydnor's efforts to satisfy the exhaustion requirement, this Court concluded that the touchstone for exhaustion is whether plaintiff's administrative and judicial claims are reasonably related, not precisely the same, and there were sufficient similarities between the two (same place of work, same

actor, and same type of discrimination) to find this requirement satisfied here. <u>Id.</u> at 597.

The <u>Sydnor</u> Court analysis should be applied here. A jury could have found that claims in Ms. Shipman's administrative and judicial claims were reasonably related or at least capable of being developed after an investigation by EEOC. Ms. Shipman's administrative and judicial claims dealt with the same actors, the same conduct, and the same grounds of discrimination. The District Court erred in finding otherwise.

In addition, the District Court erred in concluding that an EEOC investigation would not have developed claims for hostile work environment and retaliation claims after a reasonable investigation by EEOC or that these claims were not reasonably related to the claims set forth in her EEOC charge.

A jury could have found that Ms. Shipman's hostile work environment and retaliation claims are rooted in the same adverse actions, the same basis of discrimination- age, gender and race – as specified in the charge. A jury could have believed that once EEOC investigated Ms. Shipman's EEOC charge, it would have quickly discovered that Ms. Shipman had been terminated three times within a year. A jury could also have found that in its investigation EEOC would have uncovered the hostile work environment and retaliation claims that took place over

the fifteen month time period after Ms. Blakenship Hill began supervision of Ms. Shipman.  It was error for the District Court to conclude otherwise.

IV.    THE DISTRICT COURT ERRED IN CONCLUDING THAT MS. SHIPMAN'S COMPARATOR EVIDENCE WAS INVALID

The District Court dismissed in error Ms. Shipman's comparator evidence. The District Court also erred at page 23 of its Order when it concluded that it did not perceive that the  improper use of the "left at" button to be substantially the same as the failure to attempt to deliver packages.

It was not the function of the District Court to determine whether the improper use of the "left" at key was substantially the same as the failure to deliver packages. Ms. Blakenship Hill terminated Ms. Shipman the second time for improper use of the "left at" key. Ms. Blakenship Hill and UPS concluded it was dishonest. Ms. Blakenship Hill terminated Ms. Shipman the third time for failing to deliver packages. Ms. Blakenship Hill and UPS again concluded that that conduct was dishonest. The improper use of the "left" at key and failing to deliver packages were both deemed dishonest by Ms. Blakenship Hill and UPS.  The District Court should not be able to consider and dismiss this evidence when it was considered in the context of Ms. Shipman's comparators. That role was for the jury.

Deciding on the probative value of circumstantial evidence of discrimination, including comparator evidence, requires drawing a series of inferences. At summary judgment "the drawing of legitimate inferences from the

facts are jury functions, not those of a judge." <u>Anderson v. Liberty Lobby, Inc.</u>, at 255.

The inquiry into whether comparators are similarly situated is flexible, commonsense, and factual. It asks if there are enough common features between the individuals to allow a meaningful comparison?'" This is usually a question for the fact-finder. <u>Coleman v. Donahue</u>, 677 F.3d 835, 846-47 (7th Cir. 2012).

The U.S. Supreme Court cautioned that "precise equivalence in culpability "between comparators is not necessary to proving pretext; showing "comparable seriousness" is sufficient to plead an inferential case of discrimination". <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973);

The District Court erred in applying a more rigorous standard to comparator evidence than required and by concluding that the comparator evidence was invalid rather than allowing a jury to decide this issue. The District Court appeared to use a "nearly identical" standard. That standard was incorrect.

Evidence proffered by Ms. Shipman shows that Ms. Blakenship Hill targeted Ms. Shipman as soon as Ms. Blakenship Hill became Ms. Shipman's manager in January 2011. There is no evidence that Ms. Blakenship Hill harassed her male employees. Ms. Shipman's proffered evidence also shows that Ms. Shipman was terminated for dishonesty, including improper use of the "left at" key.

32

Ms. Blakenship Hill concluded that Ms. Shipman's improper use of the "left at key" was dishonesty. However, other male drivers who improperly used the "left at" key, including Duane Tipton, a 46 year old Caucasian male driver, Tim Pearson, a 31 year old year old African American male driver, and Mohammed Hussein, a 38 year old Middle Eastern driver, received only counseling and were not terminated at the time nor otherwise disciplined.

All of these male drivers are fair comparators, similarly situated. They were all managed by Ms. Blakenship Hill; they all used the "left at" key in the exact same way on the exact same route. All of the drivers' work method "violations" concerning the "left at" key were handled by Ms. Blakenship Hill: she coached the male drivers about the proper use of the key while she immediately terminated Ms. Shipman.

The District Court erred in dismissing Ms. Shipman's comparator evidence. The District Court relied upon Kelley v. United Parcel Service, No. 12-2343, __ F. App'x __, 2013 WL 2480211 (4th Cir. June 11, 2013) (unpublished opinion) and Todrick Street v. United Parcel Service, 822 F. Supp. 1357 (M.D. Ga. 2011) in reaching its conclusion that Ms. Shipman's comparator evidence was invalid.

The opinion in Todrick Street, *supra*, is not well reasoned and the District Court should not have relied upon it. The District Court in Todrick Street erred by applying a higher legal standard than is required in evaluating comparator

33

evidence. The Court concluded that comparators had to be nearly identical. Showing "comparable seriousness", however, is sufficient to plead an inferential case of discrimination". <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. at 802.

Courts may look at whether the employees compared have the same supervisor, the same work standards, and whether similar conduct was involved. In this case, Ms. Shipman and Mssrs. Hussein, Pearson and Tipton all had the same manager - Lindy Blakenship Hill. The conduct was the same as it involved grounds of dishonesty.

For the <u>Todrick Street </u>Court to consider and contrast  comparators' prior disciplinary records to compare Mr. Street, an African American male, and his white female co-worker, was error.

Mr. Street was charged with failure to report an accident. UPS considered that workplace violation a "cardinal sin" subject to immediate termination without progressive discipline. UPS treats failure to report an accident the same way as dishonesty.

UPS looks solely at the commission of the "cardinal sin" to trigger the immediate termination and not an employee's prior disciplinary record as it does when administering progressive discipline, including the working discharge under Article 7 of the Collective Bargaining Agreement.

As such, comparators' prior disciplinary records should not be a factor at the point managers make the decision to administer the immediate termination. It may well be a factor when the employee files a grievance concerning his or her immediate termination and the grievance goes to the  local or panel hearing. At that point, the panel may factor in the employee's prior disciplinary record to adjust or modify the original discipline. However, this factoring in of prior disciplinary records takes place at the time of the grievance hearing and not at the time the manager makes the initial decision to immediately terminate the employee.

Accordingly, it was error to factor in the comparator's prior disciplinary records in Todrick Street v. UPS, *supra*, and it was error for the District Court to do it here. Neither Ms. Shipman's prior disciplinary record nor her comparators' prior disciplinary records should have been at issue in the Court's consideration of Ms. Shipman's comparator evidence. It was not relevant.

At the very least, the District Court should have concluded that the Ms. Shipman's comparator evidence raised a genuine issue of material fact as to whether discrimination caused Ms. Blakenship to treat the male drivers differently than Ms. Shipman.

The District Court also erred in relying upon Kelley v. United Parcel Service, *supra*. This Court concluded that UPS employees Kelley and McDonald were not similarly situated as McDonald was a full time package car driver and

Plaintiff Kelley was a part time driver. In addition, this Court concluded that the conduct for which they were being compared was sufficiently different in that Kelley was terminated for failure to follow directions after refusing to carry out an assignment given to him by his business manager. McDonald refused to carry out the same assignment although it was determined that he had the option whether to take on the assignment or not.

Ms. Shipman and Mssrs. Hussein, Tipton and Pearson are more aligned comparators than UPS employees Kelley and McDonald in <u>Kelley v. United Parcel Service, Inc.</u>, *supra.* For a Court to require a more perfect match between a plaintiff and her comparators would be to apply the more rigorous "nearly identical" rather than the correct legal standard.

Ms. Shipman and Mssrs. Hussein, Tipton, and Pearson had the same position; they were all full time drivers with the same manager. And the conduct was the same –it all involved alleged dishonesty. The similarities are meaningful and the comparators are similarly situated under the <u>McDonnell Douglas</u> procedural framework.

V.   THE COURT ERRED IN FAILING TO CONSIDER PLAINTIFF'S ADDITIONAL EVIDENCE CONCERNING PRE-TEXT

The District Court also erred in failing to fully consider Ms. Shipman's evidence that UPS's stated reasons for terminating Ms. Shipman - that she was dishonest, had falsified company records for gain and for overall work record - was simply unworthy of credence. Burns v. AAF-McQuay, Inc., 96 F.3d 728, 731 (4th Cir. 1996). One method by which Ms. Shipman can show pretext is by demonstrating that she was treated differently from similarly situated employees who are not part of the protected class. But that is not the only way." George v. Leavitt, 407 F.3d 405, 412 (D.C. Cir. 2005)(internal citations omitted.) The District Court erred in dismissing Ms. Shipman's additional evidence that UPS's stated reasons for Ms. Shipman's terminations were a pretext for discrimination.

Ms. Shipman produced evidence that the panel that heard her third grievance found no evidence of dishonesty. The panel modified the termination to continued failure to follow work methods and procedures. The panel also concluded that Ms. Shipman was entitled to back pay for the time she was out of work between her third termination and her panel hearing because she was entitled to a working discharge under progressive discipline. A jury could have considered that evidence and concluded that because the panel found no evidence of dishonesty at the third hearing (and had restored Ms. Shipman to her position twice before after the first two terminations, finding no evidence of dishonesty for the first two terminations)

that UPS's stated grounds were not credible. At the very least, a genuine issue of material fact was created. To conclude otherwise was error.

In addition, a jury could also have reasonably concluded after considering the evidence besides the comparator evidence and the third panel hearing evidence that there was still sufficient evidence , including evidence surrounding  her three terminations, evidence about remarks said to and  about Ms. Shipman, and evidence regarding interference with her work conditions, to find that UPS's stated grounds for termination were not credible.

<u>CONCLUSION</u>

This Court should reverse the District Court's grant of summary judgment in favor of  United Parcel Service, Inc. The District Court erred in failing to apply the proper summary judgment legal standard. The District Court erred in failing to conclude that Ms. Shipman's claims were timely and she had exhausted her administrative remedies. The District Court erred in failing to conclude that Ms. Shipman's comparative and pretext evidence was sufficiently valid to preclude judgment for UPS as a matter of law.

## STATEMENT REGARDING ORAL ARGUMENT

Counsel has requested an oral argument in this appeal.

Respectfully submitted,

/s/ Sandra J. Polin
Sandra J. Polin
North Carolina State Bar No. 25824
514 Daniels Street
Private Mail Box 330
Raleigh, North Carolina 27605
919.883.7494
jyll.polin@yahoo.com

*Counsel for Appellant Denise Shipman*

39

<u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>
Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1.    This brief complies with the type-volume limitation of Fed. R. App. P.
      32(a)(7)(B) because:

          this brief contains <u>8,538</u> words, excluding the parts of the brief
          exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P.
      32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

          this brief has been prepared in a proportional spaced typeface using
          <u>Microsoft Word</u> in <u>14 point Times New Roman</u>.


                         <u>/s/ Sandra J. Polin                    </u>
                         Sandra J. Polin

                         *Counsel for Appellant*

Dated: February 19, 2014

<u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on February 19, 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Charles A. Gartland, II
ALSTON & BIRD, LLP
The Atlantic Building
950 F Street, NW
Washington, DC  20004
(202) 239-3978

Molly M. Jones
ALSTON & BIRD, LLP
1 Atlantic Center
1201 West Peachtree Street
Atlanta, GA  30309
(404) 881-4993

*Counsel for Appellee*

The necessary filing and service were performed in accordance with the instructions given to me by counsel in this case.

/s/ Shelly N. Gannon
Shelly N. Gannon
GIBSON MOORE APPELLATE SERVICES, LLC
421 East Franklin Street
Suite 230
Richmond, VA  23219